**Kenneth W. COCHRUM, Plaintiff–Appellant,**

v.

**OLD BEN COAL COMPANY, Defendant–Appellee.**

No. 96–1073.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 5, 1996.

Decided Dec. 17, 1996.

A. Courtney Cox, Hart & Hart (argued), Benton, IL, for Plaintiff–Appellant.

Ronald L. Lipinski (argued), Yvette Caizzi, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant–Appellee.

Before CUDAHY, MANION, ROVNER, Circuit Judges.

MANION, Circuit Judge.

Kenneth Cochrum was a roof bolter in a coal mine owned by Old Ben Coal Company. A work-related shoulder injury required surgery and several months of paid disability while he recovered. When he returned to work he reinjured the shoulder, resulting in many more months of recuperation. Although the company doctor finally released him from work without restrictions, Cochrum's personal doctor recommended certain restrictions to him that limited his ability to function as a roof bolter. Although he showed up for work, he refused to resume his position as a roof bolter due to his personal doctor's restrictions. Because that was the only job open for him, the company suspended him. Cochrum filed suit in federal court complaining that Old Ben discriminated against him because of his shoulder disability and refused to reasonably accommodate him in violation of the Americans with Disabilities Act ("ADA" or "the Act"), 42 U.S.C. § 12101 *et seq.* The district court concluded that the miner's shoulder injury did not render him disabled under the ADA and granted the mine summary judgment. Although we conclude a factual dispute exists as to whether the miner is disabled, we nevertheless conclude he cannot perform the duties of his job in the mine and that no reasonable accommodations would have allowed him to do so. Accordingly, we affirm the district court's judgment for Old Ben.

I.

Kenneth Cochrum has worked for Old Ben Coal Company since 1978. In the early

1990's he worked as a roof bolter. After a machine cuts and removes coal from a mine shaft, a roof bolter removes any loose rock or coal from the shaft's ceiling with a pry bar to ensure the roof is solid. Then he uses a hydraulic machine to drill holes in a specific pattern in the roof of the mine. Next he assembles a 6 to 8 foot long "bolt" and with the help of a machine, bends the bolt and inserts it into the hole. He then torques the bolt with a wrench to tighten it. Roof bolters also lift materials, load machines, move electrical and water lines, shovel coal onto conveyor belts, and generally maintain the coal mining area.

While at work in 1989 Cochrum injured his left shoulder. After surgery he returned to work. In December 1991, he again injured his left shoulder and arm at work. He applied for and was granted disability benefits. Four months later, Old Ben's doctor examined him and released him to return to work. Despite this release, Cochrum remained on paid disability and underwent arthroscopic surgery on the shoulder in April 1992. He returned to work in late May 1992. Four days later, on June 1, he reinjured the shoulder picking up a waterline. He continued to work however until June 30, 1992, when he asked to be taken to the hospital for care of his shoulder. He remained off work following this injury for a number of months.

Old Ben's doctor examined Cochrum in November 1992 and found "no detectable abnormality of his shoulder." After further exams in January and March 1993, Old Ben's doctor released him to return to work without restrictions. When Old Ben asked Cochrum to report to work, he responded that he was not yet ready. Cochrum contacted his personal doctor, who released him to work but with permanent restrictions of no overhead or heavy lifting and no pushing or pulling out from his body. Cochrum admits these restrictions prevented him from fulfilling the job duties of a roof bolter.

On April 29, 1993, Cochrum's supervisor notified him that because he had been released to return to work without restrictions by the company's doctor, he should do so. If he did not, he would be considered absent without excuse. Cochrum reported to work the same day and was told to resume his position as a roof bolter. He refused, citing his doctor's restrictions. On April 30, and again on May 1 and 3, the same events transpired. On May 5, 1993, Old Ben suspended Cochrum without intent to discharge him for these four absences from work.

Five days later, Cochrum's union, the United Mine Workers, went on strike. The strike continued until December 1993, when Old Ben laid off Cochrum and 91 other employees for economic reasons. Following the layoffs, Old Ben shut down Mine No. 25 where Cochrum had worked. Old Ben has no plans to reopen it. There is no job and no mine to which Cochrum can return. He can neither be reinstated nor can he receive back pay for his time on strike or the time he was laid off.

In October 1994 Cochrum sued Old Ben in federal court alleging Old Ben discriminated against him in violation of the ADA. Cochrum claimed he suffered a disability while working for Old Ben and that he requested a reasonable accommodation—a job within the permanent restrictions given by his doctor. Because the mine did not comply with this request, he charged that the mine discriminated against him by suspending him for unexcused absences. The case was referred to a magistrate judge before whom the parties consented to proceed to judgment.

Old Ben moved for summary judgment. The magistrate judge found that Cochrum was not disabled within the meaning of the ADA and granted Old Ben's motion. He reasoned that Cochrum's permanent restrictions "do not come close to substantially limiting his major life activity of working" because Cochrum himself "listed several other jobs he could perform in a coal mine," and failed to bear his burden of demonstrating the approximate number of jobs from which he would be excluded because of his impairment. "Doubtless," the magistrate judge concluded, "there are many other types of jobs from which his impairment would not exclude him."

The district court had federal question jurisdiction pursuant to 28 U.S.C. §§ 636(c)(1) & 1331. This court has jurisdiction pursuant to

28 U.S.C. §§ 636(c)(3) & 1291. We review the magistrate judge's grant of summary judgment *de novo*, applying the same standard. We review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party, in this case Cochrum. Summary judgment is appropriate if the record demonstrates no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We will affirm the judgment of the district court if no reasonable jury would render a verdict for the opposing party "if the record at trial were identical to the record compiled in the summary judgment proceedings." *Russell v. Acme–Evans Co.*, 51 F.3d 64, 70 (7th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)).

**II.**

The magistrate judge concluded that Cochrum was not disabled under the ADA. The Act defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A). "Substantially limits" means that the person is either unable to perform a major life function or is "significantly restricted as to the condition, manner or duration" under which the individual can perform a particular major life function, as compared to the average person in the general population. 29 C.F.R. at 1630.2(j). *See Homeyer v. Stanley Tulchin Assoc., Inc.*, 91 F.3d 959, 961 (7th Cir.1996).

Nobody disputes Cochrum's shoulder injury is an impairment; at issue is whether it substantially limits his ability to work. The magistrate judge concluded that although Cochrum cannot return to work as a roof bolter, or do any work that requires overhead or heavy lifting or pulling or pushing from his body, the impairment "does not come close" to substantially limiting Cochrum working. We are not so sure. The "Interpretive Guidance" accompanying 29 C.F.R. § 1630.2(j) states:

> An individual is substantially limited in working if the individual is significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various

classes, .... For example, an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working, .... This would be so even if the individual were able to perform jobs in another class.

The physical restrictions Cochrum's physician placed upon him—no overhead work, heavy lifting, or pulling and pushing out from his body—might apply to a broad range of jobs, and are more than job specific. As with the example of the bad back in the regulations, Cochrum's shoulder injury could disqualify him from any position at the mine, or in related work such as construction. In addition to listing a number of jobs in the mine, the magistrate judge seems to have assumed as a matter of law that plenty of places would employ Cochrum with his shoulder condition. But given the breadth of his physician's physical restrictions, a reasonable jury could conclude that Cochrum's shoulder impairment does substantially limit his ability to work. *See, e.g., Hendry v. GTE North, Inc.*, 896 F.Supp. 816, 824 (N.D.Ind.1995) (issues of material fact existed as to whether employee was limited in major life activity of working due to migraine headaches). Cochrum has at least raised a genuine issue of material fact as to whether or not he is disabled under the ADA.

Besides proof of a "disability," Cochrum must show he is a "qualified individual" under the ADA. 42 U.S.C. § 12112(a). This phrase is defined in relevant part as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To meet this definition a plaintiff must satisfy "the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.," and be able to "perform the essential functions of the position held or desired, with or without reasonable accommodation." 29 C.F.R.App. § 1630.2(m). The plaintiff bears the burden of proof to show he is a "qualified individual." *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797 (7th Cir.1995).

■ In terms of his then-current job as a roof bolter, Cochrum admitted that he could not perform his work duties with the permanent physical restrictions required by his doctor. Yet roof bolter is the position he is expected to perform. That is the job for which he is qualified, the job he actually held, and the job the company kept open for him. To be protected under the ADA, Cochrum must be qualified to do the job and, with reasonable accommodations for his disability, *be able to perform the essential functions of that job which he currently holds.* See 42 U.S.C. § 12111(8). But Cochrum cannot do so. When Old Ben called Cochrum back to work, he told his supervisor on four consecutive occasions that given his physician's restrictions he "was unable to perform the job of roof bolting." In Cochrum's words, "[i]t would be difficult if not impossible" for an individual with his physical restrictions to be a roof bolter.

■ Cochrum submits he is still a "qualified individual" under the ADA, however, because if the company implemented what he believes are reasonable accommodations for his disability, he could perform the job of roof bolter. When a disabled person is not able to perform the essential functions of the job, a court must consider whether any reasonable accommodation by the employer would enable the disabled person to perform those functions. *See School Bd. of Nassau County, Florida v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1130–31, 94 L.Ed.2d 307 (1987) (construing the Rehabilitation Act).

Here, Cochrum's claim runs into difficulties. In his deposition, Cochrum could not state what type of accommodations would have allowed him to perform the essential functions of a roof bolter. His supervisor said no such accommodations exist. In response to Old Ben's summary judgment motion on this point, Cochrum identified three types of accommodations he submits would be reasonable: (a) hiring a helper to perform the overhead work as a roof bolter; (b) assigning him to a permanent light duty position in the mine; or (c) giving him superseniority to obtain such a light-duty job he could perform.

■ None of Cochrum's proposed accommodations can correctly be labeled "reasonable." As to the first, Cochrum asserted at oral argument that the most essential function of his job was "reading the roof"—viewing the roof's contours for purposes of reinforcing the mine's ceiling—a task he can do even with his disability. But by definition, and as Cochrum admitted at his deposition, the essential function of a roof bolter is to physically work on the roof of the mine. A roof bolter does sustained work over his head: he uses a pry bar to scale down the roof, carries packages of large bolts, bends them, operates a hydraulic machine to insert them into the ceiling, and torques them in with a wrench and tests their tightness. Someone who cannot work above shoulder level and push away from his body cannot accomplish these tasks necessary to build and secure a ceiling in a coal mine. Cochrum's physician's restrictions—"no overhead work," "no heavy lifting," and "no pushing and pulling out from his body"—would be directly violated by doing these tasks essential to the job. Most notably, hiring a helper to perform the overhead work would mean the helper would de facto perform Cochrum's job. We cannot agree that Cochrum would be performing the essential functions of his job with a helper. *See Gilbert v. Frank,* 949 F.2d 637, 644 (2d Cir.1991) (job applicant's request to assign coworkers to assist with physically demanding aspects of job employee could no longer perform was not request for reasonable accommodation under Rehabilitation Act of 1973 because it sought elimination of essential functions of job). Cochrum cannot do the job unless he can do at least some work over his head, which his doctor forbids. Thus, if the physical restrictions because of his shoulder injury are valid, no possible accommodation would allow him to do the roof bolting job.

■ With respect to the other requested accommodations, it is undisputed that no light duty jobs were available in the coal mine, and Old Ben did not assign other union employees to light duty positions. Moreover, Cochrum has no right to superseniority. An employer is not required to violate the provisions of a collective bargaining agreement to

reassign a disabled employee pursuant to the ADA. *See Eckles v. Consolidated Rail Corp.,* 94 F.3d 1041, 1051 (7th Cir.1996) ("the ADA does not require disabled individuals to be accommodated by sacrificing the collectively bargained, bona fide seniority rights of other employees."). In short, reasonable accommodation does not encompass reallocation of essential job functions. *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1114 (8th Cir. 1995).[1]

"[R]eassignment to a vacant position" is another possible accommodation under the ADA. *See* 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii). In *Gile v. United Airlines, Inc.,* 95 F.3d 492 (7th Cir.1996), we recently recognized "that the ADA may require an employer to reassign a disabled employee to a different position as reasonable accommodation where the employee can no longer perform the essential functions of their current position." *Id.* at 498. In *Gile,* we qualified that general rule by "emphasiz[ing] that, along with the other requirements a disabled employee must meet under the ADA to be entitled to reasonable accommodation, there are significant limitations on an employer's potential obligation to reassign a disabled employee as reasonable accommodation," including that "[t]he ADA may only require an employer to reassign a disabled employee to a position for which the employee is otherwise qualified." *Id.* at 499. In this case, Cochrum could not perform the essential job functions of the position that he held. And it is undisputed that given his physical restrictions, no other union positions which Cochrum could have performed were available at Mine No. 25.[2] Without extraordinary accommodations—essentially having a helper do most if not all of the duties the position entails—Cochrum cannot perform the essential functions of the job of roof bolter. As a consequence, he is not a "qualified individu-

al" and thus is not eligible for protection under the ADA.

**III.**

Even if the magistrate judge incorrectly concluded that Cochrum was not disabled, his grant of summary judgment to the mine must be affirmed because Cochrum was not a "qualified individual with a disability" under the ADA. To be protected under the Act, Cochrum would have to be qualified to do the job of roof bolter and with reasonable accommodations for his disability be able to perform that job. He is not so qualified, and he has failed to present a material factual dispute regarding the reasonableness of any of his suggested accommodations. The district court's grant of summary judgment to the mine is

AFFIRMED.

CUDAHY, Circuit Judge, with whom ILANA DIAMOND ROVNER, Circuit Judge, joins, concurring:

I join the majority opinion, but write separately to emphasize that an employee is "qualified" under the ADA if that employee is able to perform the essential functions of his or her current job, *or some other available job,* with or without accommodation. (Cf. *ante* at 912.) Further, in an appropriate case, the ADA may require the employer to transfer the employee to another available job for which he or she is qualified. Unfortunately for Cochrum, no positions were available at the mine for which he was able to perform the essential functions with or without a reasonable accommodation.

---

1. The record in this case is quite detailed with regard to the various aspects of the roof bolter job. Therefore, we are satisfied the essential functions of the job are well-explicated and that remanding this case for further elaboration of these facts would be redundant. Besides, Cochrum has admitted that his physical restrictions prevented him from performing roof bolting duties.

2. Until April 28, 1993, there were no other jobs available at Mine No. 25, including the jobs listed by the district court in its opinion. On that day, Old Ben posted for bid seven "bottom laborer" positions. Cochrum never bid on those positions, and in his complaint he admitted that given his physical restrictions he could not have performed the tasks required in that position.