OPINION
Plaintiff Nancy Huberty, Executrix for the Estate of Edward D. Huberty, deceased, appeals a summary judgment of the Court of Common Pleas of Stark County, Ohio, entered in favor of defendants Esber Beverage Company and Gary Esber. Appellant assigns two errors to the trial court:
ASSIGNMENTS OF ERROR
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMINING THAT DEFENDANT APPELLEE ESBER MET ITS OBLIGATION UNDER THE LAW TO ENGAGE IN THE INTERACTIVE PROCESS IN GOOD FAITH AFTER HUBERTY REQUESTED AN ACCOMMODATION TO THE BEVERAGE SALES REPRESENTATIVE POSITION.
 ASSIGNMENT OF ERROR NO. 2
 THE COURT ERRED AS A MATTER OF LAW IN DETERMINING THAT NO MATERIAL FACT ISSUES EXISTED REGARDING WHETHER HUBERTY WAS A QUALIFIED INDIVIDUAL WITH A DISABILITY CAPABLE OF PERFORMING THE ESSENTIAL FUNCTIONS OF THE JOB WITH OR WITHOUT A REASONABLE ACCOMMODATION.
Certain facts are undisputed. Appellant's decedent, Edward D. Huberty worked for appellee as a driver/salesman. As a driver/salesman, decedent was required to deliver cases of wine and beer, and kegs of beer to various retail establishments on an assigned route. Decedent had to lift the kegs and cases from his truck or van and transport them into the tavern, restaurant, or carry-out. The parties agree the position required frequent, repetitive heavy lifting.
The constant heavy lifting caused decedent to develop rotator cuff tendinitis in both his shoulders. Eventually, decedent under went surgery on one of his shoulders, but it was only partially successful. Dr. Anthony Pentz, decedent's physician, set permanent work restrictions which limited decedent's ability to perform certain tasks. Specifically, Dr. Pentz restricted decedent from repetitive and stressful activities where he would be required to lift an object over a 90 degree point, and also prohibited decedent from lifting over 40 pounds from the floor to waist level. Decedent was not permitted to lift above waist level except for an occasional 5 pounds and no more than 2 or 3 times daily. Appellant testified her decedent had difficulty changing an overhead light bulb.
The parties agree based upon the above restrictions, decedent was no longer capable of performing the job of driver/salesman. In February of 1996, decedent participated in a program of physical therapy and rehabilitation under the direction of the Board of Workers' Compensation. During the program, a Vocational Rehabilitation Services Department Specialist, Lisa Berkowitz, worked with decedent.
In the process of decedent's rehabilitation, Berkowitz and decedent engaged in a protracted dialogue with appellees to place decedent as a beverage sales representative with appellees' organization. This position required some delivery, but far less heavy lifting than the position of driver/salesman. Decedent's former position was a union position, but the beverage sales representative position was non-union.
The parties dispute whether appellees acted in good faith in their dealings with Berkowitz and decedent regarding the beverage sales position. Appellee maintained decedent was incapable of performing the beverage sales position, and that efforts to place other driver/salesman into those positions was unsatisfactory to all. Decedent never returned to work after his injury and surgery, and decedent died on December 14, 1996.
Civ. R. 56 (C) states in pertinent part:
(C) Motion and proceedings
 The motion shall be served at least fourteen days before the time fixed for hearing. The adverse party, prior to the day of hearing, may serve and file opposing affidavits. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
Summary judgment is inappropriate if it appears a material fact is genuinely disputed, or if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts, Hounshell v. American StatesInsurance Company (1981), 67 Ohio St.2d 427, 433. A trial court may not resolve ambiguities on the evidence presented, Inland Refuse TransferCompany v. Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321.
This court reviews summary judgments using the same standard as the trial court, Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35.
Both appellant's assignments of error address issues presented by the Americans With Disabilities Act and Ohio's corollary statute, R.C.4112.02. In general, the Americans With Disabilities Act,42 U.S.C. § 12112, provides an employer may not discriminate against a qualified person with a disability because of the disability of the individual in regard to job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, or other terms, conditions, and privileges of employment.
The ADA defines "discriminate" in various ways, including failure to make reasonable accommodations to known physical or mental limitations of an otherwise qualified individual with a disability who is an employee, unless the employer can demonstrate the accommodation would impose an undue hardship on the business. The statute defines discrimination as denying employment opportunities to an employee who was otherwise a qualified individual with a disability, if the denial is based on the need of an employer to make reasonable accommodations for the physical or mental impairment of the employee.
29 C.F.R. § 1630.2 defines disability as a physical or mental impairment which substantially limits one or more of the major life activities of an individual. Major life activities are defined as functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. The statute notes the list is not exhaustive, and may include other functions.
O.R.C. 4112.02 is similar to the federal statute. The statute provides it is an unlawful discriminatory practice to discharge an employee because of a handicap or otherwise to discriminate against the person with respect to hiring, tenure, terms, conditions and privileges of employment, or any other matter directly or indirectly related to employment. The statute defines handicap similarly to the ADA definition.
The trial court's judgment entry of June 21, 2001 correctly finds the determination of whether a given person is a qualified individual with a disability is a two-step process. First, the court must determine whether or not the person satisfies the pre-requisites for the position the individual holds or desires. The second step is to determine whether or not the person could perform the essential functions of the position held or desired with or without a reasonable accommodation.
 II
In the judgment entry of June 27, 2001, the trial court found decedent was not a qualified individual with a disability, and for this reason, appellees were entitled to judgment as a matter of law. As regard to his former position as a delivery driver, decedent was unable to perform the essential functions of the position even with reasonable accommodations. Regarding the desired position, as a beverage sales representative, the court found the record contained no credible evidence that decedent satisfied the requisite skill, experience, education, or physical requirements necessary to perform the essential functions of a beverage sales representative. The court concluded decedent was not a qualified individual with a disability with regard to the position he sought.
Appellant urges the record contains some competent and credible evidence tending to show decedent could perform the essential functions of a beverage sales representative.
The question of what constitutes reasonable accommodation has been explored by many courts, but the issue remains nebulous. Reasonable accommodations will vary according to the particular circumstances of the business, the employer, and the employee. However, the case law is helpful in outlining the concept of reasonable accommodation. Reasonable accommodation does not require the employer to restructure or change the essential functions of the job, nor is the employer required to create a new or special position or to assign the employee to a position already occupied, Massey v. Scrivner, Inc. (W.D.Okla. 1894), 901 F. Supp. 1546. An employer is not required to re-train his employee for another position within the company, Turco v. Hoechst Celanese Chemical Group (S.D.TX. 1995), 906 Fed. Sup. 1120. An employer is not required to provide a helper or assistant to perform any of the essential functions of the job, to re-assign essential job functions to other employees, or to violate the provisions of a collective bargaining agreement in order to re-assign an employee to a non-union position, Cochrum v. Old Ben CoalCompany (CA7, Ill. 1996), 102 F.3d 908.
Dr. Anthony Pentz sent a letter dated July 2, 1996 to the Ohio Bureau of Workers' Compensation outlining the limitations he had placed on decedent. The doctor noted decedent could do overhead lifting of five pounds as about 20 percent of his workload. Five to fifteen pounds may be pulled occasionally, but not repetitively. Decedent could not return to his former position, and could not lift cases overhead. The physician placed a five to fifteen pound weight lifting limit above chest level. The doctor also cautioned that these restrictions would be permanent. On November 6, 1996, Dr. Pentz sent a letter to appellee, advising when decedent's shoulder was stressed in any way above the 90 degree point, it caused decedent significant pain and crepitus within the shoulder. The doctor advised appellees decedent was precluded from doing any type of repetitive stressful activities over the 90 degree point, and limited his total lifting to 40 pounds restricted only from floor to waist level. Higher than that, the doctor required there would be no lifting except an occasional five pounds but no more than two or three times daily. The doctor found if decedent performed work within these limitations, he would suffer no further injury. Finally, the doctor stated there was no reason why decedent could not drive.
Various depositions filed in the case describe the position of beverage sales representative. Rochelle Milnac and Edward Shutt, were both former employees whom appellees had employed as beverage sales representatives. These persons described the position as requiring them to sell the product, take orders, and set up displays. Milnac testified she was unsure if she had ever transported a keg of beer, but most commonly, she would take cases of beer. Milnac also deposed her particular route was an on-premises route. Off-premise routes, for grocery stores and drive thrus, required building of displays. The routes also required much more lifting because the representative had to check the dates of beer in the cooler, and rearrange the product. Milnac testified she believed the off-premises routes required more beer delivery than the on-premises, which consisted of bars and restaurants. Milnac conceded that although she did not build displays she did hang banners and neon signs, which required her to climb a ladder and work over her head.
B. Edward Schutt deposed that as a beverage sales representative, he drove a van so he could carry with him the "point of sale stuff and samples". During the holidays, it was rather busy and he was required to take wine and other things more often. Schutt testified he believed two or three days a week he was required to transport some products. He estimated a case of wine might weigh fifteen to twenty pounds, and champagne would be heavier. He was furnished a dolly to transport the products, but did not recall ever having to lift the cases over his shoulders. Some of the customers did not want the sales representative to shelve items, and some were glad if the representative did so. On his particular route, Schutt testified the store people usually built displays, and in fact, at the Acme stores the collective bargaining agreement requires the store employees to build the displays. Schutt testified in a year's time he was probably required to build between twenty and fifty displays stacking cases of wine. This task varied, being once or twice a month during the slower times, and much more frequently during the holidays. The displays were generally stacked to about eye level, although it varied. Sometimes employees of the store would help.
David Esber, the President and part owner of the Esber Beverage Corporation, and Gary Esber, another employee and part owner, also gave depositions. They testified a beverage sales representative might be required to lift or reach, do repetitive overhead work, build displays, stack cases of beer and wine, hang neon signs or banners overhead, rotate stock, and make certain deliveries. Gary Esber estimated the weight of a neon sign as 10 to 15 pounds. He deposed a case of beer weighs 28 to 35 pounds and kegs weigh 170 pounds.
Stephen Graham deposed that he had been employed by appellee some 21 years, until he retired because of disability. During that time, he worked only a few days as a beverage sales representative. He characterized the driver-sales position as a heavy lifting position, while the beverage sales representative required taking orders, turning them in, and selling new products. Graham testified he only held the salesman position for a few days, and was told by Gary Esber management had tried twice to transfer delivery persons to sales, and it did not work out in either occasion. Graham conceded there could sometimes be a lot of lifting in the beverage sales position. Graham testified every year they would have beverage sales representative positions available because people come and go, and the company grows. Graham could not be specific as to whom appellees could have hired as a beverage sales representative during the time decedent was attempting to secure such a position.
In its judgment entry granting summary judgment, the trial court noted Ron Thorpe, a business agent for the International Brotherhood of Teamsters, Local 92, and Lisa Berkowitz, a nurse and rehabilitation service specialist with the Ohio Bureau of Workers' Compensation, furnished affidavits. The court found Thorpe's affidavit conflicts with the testimony given in his deposition. In the deposition, Thorpe testified he did not know whether there were any requirements of beverage sales positions that exceeded decedent's doctor imposed limitations. In the affidavit Thorpe asserts decedent could have performed the job. Berkowitz's affidavit conflicts with testimony given at her deposition regarding the vocational goals she set for decedent. In her deposition Berkowitz stated the goal was to place decedent in a different job with a different employer, while in her affidavit she says the goal was to place decedent in a different job with the same employer.
A party may not impeach or rehabilitate his deposition testimony with an affidavit, except under certain circumstances. If a non-moving party has presented conflicting testimony, in which the affidavit is inconsistent with prior deposition testimony as to material facts, and the affidavit does not demonstrate the affiant was confused at the deposition or give a reason for the contradictions, the affidavit does not create a genuine issue or fact which could preclude summary judgment, Kolmorgean v. Raghavan (May 5, 2000), Mahoning Appellate No. 98CA123, unreported.
We agree with the trial court that the affidavits do not agree with the depositions, and give no reason for the changed allegations.
We have reviewed the record de novo, and we find the trial court was correct in concluding the record therein does not demonstrate decedent would have been able to perform the essential job functions of the beverage sales representative. Accordingly, the trial court was correct in determining appellant was not a qualified individual with a disability, such that appellees were required to furnish him a reasonable accommodation for employment.
The second assignment of error is overruled.
 I
In her first assignment of error appellant argues appellees failed to meet their obligation under the law to engage in an interactive process in good faith after decedent requested accommodation. Appellants cites us to case law that provides an employer has an affirmative obligation to seek out the employee and work with him or her to craft a reasonable accommodation which, if possible, would permit the disabled employee to return to work, Gile v. United Airlines, Inc. (7th Cir. 2000),213 F.3d 365; see also Shaver v. Wolske Blue (July 13, 2000), Franklin Appellate No. 99 AP-331, unreported. The Shaver court found an employer must know about the employee's disability, and make a good-faith effort to assist the employee in seeking accommodations.
Appellant cites various examples of good faith, including meeting with the employee, requesting information about the employee's condition and limitations, asking the employee what he or she wanted, showing some indication of considering the employee's request and offering and discussing alternatives if the initial request was too burdensome given the business setting, see e.g. Taylor v. Phoenixville (CA3-1999), 184, Fed. 3d 296.
Appellees respond appellant must first demonstrate decedent was a qualified individual with a disability, that is, that decedent possessed the requisite skills and training to perform the job he desired, with or without accommodation. Appellees assert that until decedent has demonstrated he is a qualified individual with a disability, there is no requirement appellees engaged in an interactive process to develop reasonable accommodations.
We believe appellees have over simplified the matter. Certainly, what constitutes reasonable accommodation may vary widely from case to case, and also, the extent of the interactive process will vary from case to case. Nevertheless, at the bare minimum, an employer must engage in an interactive process at least to the extent of evaluating the information about the employee's disability and limitations in order to determine whether the employee can be reasonably accommodated. For example, an employer who refuses to consider the employee for any job, and refuses to review the medical information, is certainly not acting in good faith. If such a review leads the employer to conclude there is no reasonable accommodation which would assist the employee in a job, and no job which the employee could perform with his limitations, then that should be the end of the interactive process. Further interaction and discussions regarding accommodation are required when it appears the employee can be accommodated and restored to employment.
The trial court's judgment entry does not discuss this aspect, because it found decedent was not a qualified individual entitled to accommodation. We find appellees did discharge their first obligation, by reviewing decedent's limitation. At that point, they correctly decided there was no reasonable accommodation available to assist decedent either in his former position or the one he desired, and were not required to pursue the matter further.
The first assignment is overruled.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Costs to appellant.
Hon. W. Scott Gwin, P.J. Hon. William B. Hoffman, J. Hon. John W. Wise, J. concur.