13-1741-cv
Wegner v. Upstate Farms Coop., Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of March, two thousand fourteen.

PRESENT: REENA RAGGI,
              GERARD E. LYNCH,
                     *Circuit Judges*,
              COLLEEN McMAHON,
                     *District Judge.*[*]

---

MICHAEL WEGNER,
              *Plaintiff-Appellant*,

          v.                              No. 13-1741-cv

UPSTATE FARMS COOPERATIVE, INC., UPSTATE NIAGARA COOPERATIVE, INC., UPSTATE MILK COOPERATIVES, INC.,
              *Defendants-Appellees.*

---

APPEARING FOR APPELLANT:       KEVIN P. WICKA, (Jenna S. Strazzulla, *on the brief*), The Tarantino Law Firm, Buffalo, New York.

---

[*] The Honorable Colleen McMahon, of the United States District Court for the Southern District of New York, sitting by designation.

APPEARING FOR APPELLEES:     ROBERT C. WEISSFLACH, Harter Secrest & Emery LLP, Buffalo, New York.

Appeal from a judgment of the United States District Court for the Western District of New York (John T. Curtin, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on April 5, 2013, is AFFIRMED in part and VACATED and REMANDED in part.

Plaintiff Michael Wegner appeals from an award of summary judgment in favor of his former employer Upstate Farms Cooperative, Inc., and its affiliates, Upstate Niagara Cooperative, Inc. and Upstate Milk Cooperatives, Inc. (collectively, "Upstate"), on his disability discrimination claims under the Americans with Disabilities Act ("ADA"), see 42 U.S.C. § 12101 et seq., and the New York Human Rights Law ("NYHRL"), see N.Y. Exec. Law § 296, et seq.  We review the award of summary judgment de novo, see Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010), construing the evidence in the light most favorable to Wegner, and drawing all reasonable inferences and resolving all ambiguities in his favor, see Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006).  We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm in part and vacate and remand in part.

1.      ADA Claims

Wegner submits that the district court erred in concluding that he failed to adduce sufficient evidence to satisfy the disability element of a prima facie ADA claim. See Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001). At the time of Wegner's 2008 termination, the ADA defined disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." EEOC v. J.B. Hunt Transp., Inc., 321 F.3d 69, 74 (2d Cir. 2003) (quoting 42 U.S.C. § 12102(2) (1995)), superseded by ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008) (amending ADA to state, inter alia, that "[a]n individual meets the requirement of being regarded as having [a disability] . . . whether or not the impairment limits or is perceived to limit a major life activity" (internal quotation marks omitted)).[1]

a.      Actual Disability

To establish actual disability under the ADA, a plaintiff must show that (1) he suffers from a "physical or mental impairment," (2) that "substantially limits," (3) a "major" life activity. Bragdon v. Abbott, 524 U.S. 624, 631 (1998). Wegner argues that his limited ability to extend his neck, to lift objects overhead, and to bend and twist limits

---

[1] Because we apply a prior version of the ADA, we cite to cases whose reasoning has since been abrogated. For economy, we do not denote this specifically for each case to which it is applicable.

3

his ability to work. Defendants do not contest either Wegner's physical impairment or that working is a major life activity. The only issue, therefore, is whether Wegner adduced evidence sufficient to allow a jury to find the requisite substantial limitation on his ability to work. At the time in question, relevant regulations stated, with respect to working, that "[t]he term <u>substantially limits</u> means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (2008); <u>Cameron v. Cmty. Aid for Retarded Children, Inc.</u>, 335 F.3d 60, 65 (2d Cir. 2003) (stating that inability to perform single, particular job does not constitute substantial limitation in major life activity of working).[2]

Applying this criterion here, we conclude that Wegner failed to adduce sufficient evidence of substantial limitation. The record shows that Wegner cannot lift more than 75 pounds and cannot engage in repetitive lifting.[3] While this may disqualify him from his past position of Wholesale Driver at Upstate or other jobs requiring heavy or repetitive lifting, <u>see</u> J.A. 442, 443 (listing "[p]icking up and moving empty pallet[s]—up to 65 pounds" and "regularly stack[ing] and unstack[ing] cases weighing 25 to 50 pounds to or

---

[2] "Because the [EEOC] is the agency that bears responsibility for implementing specific provisions of the ADA, we generally defer to the EEOC regulations in construing the ADA's terms." <u>Giordano v. City of New York</u>, 274 F.3d 740, 747 (2d Cir. 2001).

[3] This is an improvement from prior limitations as communicated by Wegner's personal physician: in July 2006, he could lift only 20 pounds and had limited neck extension, and in November 2006, he could lift up to 45 pounds and could not engage in repetitive lifting.

from floor level to above shoulder height" as requirements for Wholesale Driver position), it is insufficient to show that he is disqualified from truck driving positions generally, see Colwell v. Suffolk Cnty. Police Dep't, 158 F.3d 635, 645 (2d Cir. 1998) (finding insufficient evidence of general restrictions "[w]ithout specific evidence about the kinds of jobs from which [plaintiff] would be disqualified" (emphasis added) (internal quotation marks omitted)).

Indeed, there is no evidence from which to determine that other trucking jobs that Wegner is able to perform—including his employment as a truck driver since 2008—should be considered a different class of jobs. A class of jobs encompasses a breadth of positions related to the one a plaintiff cannot perform, not simply analogous positions with slight variations. See Muller v. Costello, 187 F.3d 298, 313 (2d Cir. 1999) (holding that "correctional officer constitutes a single, particular job," not class of jobs); Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1370–71 (11th Cir. 1998) (holding that piloting aircraft is specific job and relevant class of jobs includes ground trainer, flight instructor, and management or administrative airline employment) (cited with approval by Muller v. Costello, 187 F.3d at 313). This court has previously rejected parsing truck driver employment into segregated classes of jobs, even where the position in question comprises many different routes requiring different abilities. See EEOC v. J.B. Hunt Transport, Inc., 321 F.3d at 75–76 (holding plaintiff not disabled as matter of law because "driving freight-carrying tractor-trailer trucks over long distances for extended periods of

5

time is neither a 'class of jobs' nor a 'broad range of jobs'"). In short, Wegner has not produced sufficient evidence that his impairments, which limit his work as an Upstate Wholesale Driver, disqualify him from a class or broad range of jobs.

In urging otherwise, Wegner attempts to analogize the record facts to those of other cases. We note first that the cited cases, none of which binds this court, must be reviewed carefully in light of the Supreme Court's instruction that "the existence of a substantial limitation on a major life activity must be determined on a case-by-case basis." Capobianco v. City of New York, 422 F.3d 47, 59 (2d Cir. 2005) (citing Toyota Motor Mfg. v. Williams, 534 U.S. 184, 198 (2002)). Second, the cases Wegner cites are distinguishable in ways not favorable to him. Although Quint v. A.E. Staley Manufacturing Co., 172 F.3d 1 (1st Cir. 1999), held that "[t]he inability to lift heavy objects and perform repetitive manual tasks can translate across a broad spectrum of physically demanding jobs," it did so in the context of a record showing that physically demanding jobs were the "economic mainstay" of the relevant geographical area, and that plaintiff's education limited her to such jobs, id. at 11–12. In the absence of such evidence, however, courts have held similar impairments not to rise to the level of a disability. See, e.g., McKay v. Toyota Motor Mfg., U.S.A., 110 F.3d 369, 373 (6th Cir. 1997) (holding that, although plaintiff was limited to lifting maximum of twenty pounds, restricted from using vibrating tools, and unable to perform repetitive motions with right hand, "at best, [plaintiff's] evidence supports a conclusion that her impairment disqualifies

6

her from only the narrow range of assembly line manufacturing jobs"). Wegner also cites Cochrum v. Old Ben Coal Co., 102 F.3d 908 (7th Cir. 1996), for the proposition that the inability to perform "overhead work, heavy lifting, or pulling and pushing out from [plaintiff's] body[]might apply to a broad range of jobs, and are more than job specific," id. at 911. But Cochrum appears not to demand evidence regarding similar job prospects as required by this and other circuits. Moreover, its conclusion that the "breadth" of impairments was sufficient for a jury to conclude that plaintiff was "disqualif[ied] . . . from any position at the mine [where he worked], or in related work such as construction," id., is factually inapposite here, where Wegner's limitations are not nearly as extensive. Indeed, the Seventh Circuit later emphasized the breadth of the impairment in Cochrum in holding that a forty-five pound lifting restriction, a ban on strenuous work, and a ban on driving a forklift for more than a few hours per day did not "constitute a significant restriction on one's capacity to work." See Contreras v. Suncast Corp., 237 F.3d 756, 763 & n.5 (7th Cir. 2001).

Wegner contends that the district court erred in overlooking restrictions on his neck extensions. That limitation, although documented in Wegner's physician's first note, was omitted from later statements, and Wegner himself stated that looking up causes him no discomfort; he is limited only in his range of motion, meaning he can look and work above his head but not over his head. Further, Wegner has provided no evidence as to how his limited range of motion substantially limits his ability to work as provided by the ADA.

7

Accordingly, like the district court, we conclude that Wegner has failed to provide sufficient evidence of actual disability to withstand summary judgment.

b.    Regarded as Disabled

An employee who is not actually disabled may nonetheless establish "disability" as defined in the ADA through evidence of adverse employment action based on employer perception of actual disability.   See 42 U.S.C. § 12102(2)(C).   Wegner cannot carry this burden by showing that Upstate "regarded [him] as somehow disabled"; he must show that Upstate "regarded [him] as disabled within the meaning of the ADA."   Colwell v. Suffolk Cnty. Police Dep't, 158 F.3d at 646 (emphasis in original).   In short, Wegner had to adduce evidence "that [Upstate] perceived [him] to be incapable of working in a broad range of jobs suitable for persons of [his] age, experience, and training."   Id. at 647 (internal quotations, alterations, and citation omitted)); see Giordano v. City of New York, 274 F.3d at 748.[4]

Viewed in the light most favorable to Wegner, the evidence can be taken to show that Upstate was disinclined to reinstate Wegner to his past position after he left to have back surgery.   Further, when Wegner was first cleared to return to work with a 20-pound lifting limitation, Upstate offered him a temporary cooler checker position, which involved light-duty work, only to rescind the offer because the job would require lifting cases

---

[4] Because it is Upstate's perception of disability, not Wegner's, that matters, Wegner cannot carry his burden by pointing to a company document where he self-identified as disabled.

weighing up to 43 pounds. Wegner ascribes discriminatory motives to this turn-around. Further, he asserts that, although he was first told that there were Wholesale Driver positions that required little to no lifting and that would fit his limitations, when one of those positions became available, he was not allowed to bid for it. Indeed, Wegner argues that, even when his lifting ability was increased to 75 pounds, which is more than is required for a Wholesale Driver, he was not given a position because he could still not regularly lift.

This record is insufficient to allow a jury to infer perceived disability under a class or broad range of jobs, some of which Wegner could, in fact, perform. As to the cooler checker position, Wegner adduced no evidence contesting the veracity of the weight lifting requirement or his inability to satisfy the requirement at the time of rescission. As to the Wholesale Driver position, its requirements include "[p]icking up and moving empty pallet[s]—up to 65 pounds" and "regularly stack[ing] and unstack[ing] cases weighing 25 to 50 pounds to or from floor level to above shoulder height." J.A. 442–43.[5] It is undisputed that, until September 2007, Wegner could not lift more than 45 pounds and, even then, could not engage in repetitive lifting. Thus, while denying him this position could support a finding that Upstate regarded Wegner as limited by his impairment from

---

[5] The 1997 version of the requirements also required "regularly stack[ing] and unstack[ing] cases weighing 25 to 50 pounds to or from floor level to above shoulder height" and listed under physical abilities required, "Lifting—(Frequently above shoulder level) 25–55 lbs." J.A. 414, 415.

9

performing the particular and specific duties of its checker and driver jobs, it is insufficient to support an inference that Upstate regarded him as disabled under the ADA from the class of jobs.

Capobianco v. City of New York, 422 F.3d 47, is not to the contrary. There we reversed a grant of summary judgment for defendants where a sanitation employee with night-blindness was initially placed on "medical tissue" preventing him from all driving, despite his ability to drive during the day, id. at 60. In Capobianco, however, the employer attributed to plaintiff an eye disease he did not have and erroneously asserted that his vision was deteriorating. Id. Such evidence permitted a reasonable jury to find that defendants regarded the employee as disabled because it spoke to their perception of his abilities. The same ADA disability inference cannot be drawn from Upstate's determination that Wegner failed to meet the standards of a Wholesale Driver, where, as here, no evidence suggests that Upstate thereby perceived him as physically unable to perform driver duty in circumstances not requiring heavy or repetitive lifting. See Giordano v. City of New York, 274 F.3d at 749 (stating that taking plaintiff off full police duty "establishes at most that defendants regarded him as disabled from police or other investigative or security jobs that involve a substantial risk of physical confrontation," but not from substantially similar positions without same degree of risk). Accordingly, there is insufficient evidence of perceived ADA disability to allow Wegner to defeat summary judgment on that theory.

10

2.      New York Human Rights Law

After dismissing Wegner's ADA claim on the ground that he is not disabled, the district court summarily dismissed his NYHRL claim, observing that the same analysis applies to both.   This is incorrect.   See Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 233 (2d Cir. 2000) (stating that "the term disability is more broadly defined under the NYHRL and the Administrative Code than it is under the ADA" (internal quotation marks omitted)).   At the same time, however, the district court cited authority supporting the dismissal without prejudice of supplemental claims where a district court has dismissed claims over which it has original jurisdiction.   See, e.g., Marcus v. AT&T Co., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); see also Giordano v. City of New York, 274 F.3d at 754–55 (identifying error in district court's decision to exercise supplemental jurisdiction in such circumstances).   Here, the judgment does not state whether the NYHRL claim was dismissed with or without prejudice.   Thus, it is unclear whether the dismissal of Wegner's NYHRL claim was on the merits or based on a decision not to exercise supplemental jurisdiction.   We are therefore obliged to remand to the district court so that it may clarify the judgment.   To the extent the district court exercises supplemental jurisdiction to dismiss on the merits, it must reconsider whether Wegner is disabled under the NYHRL.

11

We have considered Wegner's remaining arguments and reject them as without merit. Accordingly, the order of the district court is AFFIRMED in part and VACATED and REMANDED in part.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court