17-3564-cv
*Tooly v. Schwaller*

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term 2018

(Argued: October 11, 2018          Decided: March 20, 2019)

Docket No. 17-3564-cv

_____

PAUL TOOLY,

*Plaintiff-Appellee,*

– v. –

JOHN F. SCHWALLER,

*Defendant-Appellant,*

STATE UNIVERSITY OF NEW YORK AT POTSDAM, MARY DOLAN,

*Defendants.*

_____

Before: WALKER, CALABRESI, and LIVINGSTON, *Circuit Judges*.

Appeal from the judgment of the United States District Court for the Northern District of New York (Hurd, *J.*) granting in part and denying in part Defendants' motion for summary judgment. Plaintiff was an employee of Defendant State University of New York at Potsdam ("SUNY"). Defendants placed Plaintiff on involuntary leave and required Plaintiff to undergo a medical evaluation. Plaintiff

twice failed to appear for the medical evaluation, and Defendants eventually terminated Plaintiff's employment.

Plaintiff sued Defendants SUNY, Mary Dolan, and John Schwaller for (1) deprivation of due process in violation of the Fourteenth Amendment, (2) violation of the Equal Protection Clause of the Fourteenth Amendment, (3) disability discrimination in violation of the New York State Human Rights Law, and (4) retaliation in violation of the New York State Human Rights Law. The district court granted summary judgment to SUNY and Dolan on all of Plaintiff's claims. It allowed Plaintiff's disability discrimination claim against Schwaller to proceed under the New York State Human Rights Law, but it dismissed Plaintiff's equal protection and retaliation claims against Schwaller. The appeal before us being interlocutory and all the above decisions not being intertwined with this appeal, the validity of these judgments is not before us and remains to be decided in possible appeals when a final judgment in Plaintiff's suit has been issued.

The district court also denied summary judgment to Defendant Schwaller on Plaintiff's procedural due process claim against him. In doing this, it rejected, on the grounds that Schwaller violated some requirements of the New York Civil Service Law, Schwaller's claim that he was entitled to qualified immunity. This was error. Because we further conclude that Schwaller's conduct did not violate clearly established law, and that he therefore is entitled to qualified immunity, we REVERSE the district court's decision in this respect and REMAND with instructions to dismiss the procedural due process claim against Schwaller.

---

Matthew J. Blit, Levine & Blit, PLLC, New York, NY, *for Plaintiff-Appellee*.

Joseph M. Spadola, Assistant Solicitor General of Counsel (Barbara D. Underwood, Solicitor General; Andrea Oser, Deputy Solicitor General; and Eric T. Schneiderman, then Attorney General of the State of New York; *on the brief*), Albany, NY, *for Defendant-Appellant*.

---

GUIDO CALABRESI, *Circuit Judge*:

On December 23, 2013, Paul Tooly sued the State University of New York at Potsdam ("SUNY"); Mary Dolan, Director of Human Resources at SUNY; and John Schwaller, then-President of SUNY. Tooly claimed, *inter alia*, that the defendants violated his procedural due process rights under the Fourteenth Amendment when they placed him on involuntary leave and later terminated his employment. The defendants moved for summary judgment, which the district court granted in part and denied in part. In relevant part, the district court denied summary judgment to Schwaller on Tooly's procedural due process claim, holding that Schwaller was not entitled to qualified immunity. In doing so, the district court relied heavily on its finding that Schwaller had violated the requirements of the New York Civil Service Law. Schwaller now brings an interlocutory appeal from that denial.

The only issue in this appeal is whether the district court erred in denying summary judgment to Schwaller on the ground of qualified immunity. We hold that it did. Failure to comply with a state procedural requirement—such as the New York Civil Service Law—does not necessarily defeat a claim for qualified immunity under federal law. Moreover, because Schwaller's conduct did not

3

violate clearly established federal law, we further hold that he is entitled to qualified immunity as a matter of law. Accordingly, we reverse this portion of the district court's decision and remand with instructions to dismiss the due process claim against Schwaller.

## BACKGROUND

### A. Facts

Paul Tooly had been employed by SUNY as a motor vehicle operator beginning in February 2000. On May 13, 2011, Melissa Proulx, Assistant Director of Human Resources, wrote to the Employee Health Services division of the New York State Department of Civil Service to request a mental stability evaluation of Tooly. In the letter, Proulx identified a number of incidents that prompted the request, including, *inter alia*, (1) that Tooly had interrupted a private meeting to deliver a letter that made no sense to Schwaller, then-President of SUNY; (2) that, while driving his truck, Tooly had swerved toward two employees and driven through a narrow gap between them; (3) that Tooly had grabbed a report out of another employee's hands and added information to the report, even after he had been told he could not do so; and (4) that Tooly became agitated at work on

4

multiple occasions, including May 11, 2011,[1] when he walked off the job without permission. Tooly alleges that he was not provided with a copy of the letter requesting the medical evaluation and was never made aware of its contents prior to this litigation.

On May 17, 2011, Schwaller sent Tooly a letter informing him that he was being placed on an involuntary leave of absence effective the following day. This letter stated that Schwaller believed Tooly's continued presence on the job severely interfered with the operations of the department. Schwaller directed Tooly to undergo a medical examination and advised him that "failure to attend this medical examination may subject [him] to disciplinary action." Joint Appendix (hereinafter "J.A.") 55. The letter indicated that, while on leave, Tooly could draw on his accrued leave days, and, when those were exhausted, he would be eligible for sick leave at half-pay.

On May 24, 2011, Dolan sent Tooly a letter informing him that he must appear for a medical evaluation on June 6, 2011. On June 3, Tooly sent Schwaller a letter requesting a written statement of facts as to why he was placed on

---

[1] Dolan's letter actually identified May 10 as the date that Tooly abandoned his job. But other record evidence, including Tooly's termination letter, *see* J.A. 70, consistently states that this event occurred on May 11.

5

involuntary leave and required to undergo a medical evaluation. On June 7, Schwaller responded with a letter denying Tooly's request. Tooly did not attend the medical evaluation scheduled for June 6. The evaluation was then rescheduled for June 27, and Proulx sent Tooly a letter on June 9 to inform him of the new date. The letter again advised Tooly that "failure to keep this appointment may result in disciplinary action." J.A. 59. Tooly again failed to appear on this second rescheduled date.

On June 30, 2011, Dolan sent Tooly a letter directing him to report to the Office of Human Resources for a disciplinary interrogation meeting on July 6, 2011. The letter stated that Dolan had received a report indicating that Tooly "may have committed acts for which formal disciplinary action may be initiated." J.A. 60. It added that the purpose of the disciplinary interrogation meeting was to question him concerning this matter. The letter again advised that "failure or refusal to report as directed may, in itself, be grounds for disciplinary action." *Id.*

To allow Tooly time to consult with an attorney, the disciplinary interrogation meeting was subsequently postponed to July 8, 2011. On July 6, Tooly's attorney, James D. Hartt, sent a letter to Dolan requesting information about the purpose of the meeting and a general description of Tooly's alleged

disciplinary issues. Twice—once on July 11 and again on July 12—Dolan called and left a message with Hartt's office, asking Hartt to call her back to discuss the upcoming meeting. But Dolan never received a return call or any communication from Hartt.

On July 12, the disciplinary interrogation meeting was again rescheduled, this time for July 18, 2011. On July 14, Tooly requested that the meeting be postponed a third time. Dolan declined to reschedule the meeting and sent Tooly letters on July 14 and 15 to remind him that he needed to appear on July 18. The July 15 letter additionally stated:

> If you fail to apply [sic] with this directive you are waiving your right to provide information about potential disciplinary action that could be issued against you. Your failure or refusal to report as directed may, in itself, be grounds for disciplinary action against you. Any disciplinary action taken against you will proceed without the interrogation.

J.A. 68. Tooly did not appear at the disciplinary interrogation.

On July 18, 2011, after Tooly failed to appear, SUNY sent Tooly a Notice of Discipline, informing him that he would be fired. The Notice included three charges of misconduct: (1) abandoning his job on May 11, 2011; (2) failing to report for medical examinations on June 6, 2011 and June 27, 2011; and (3) failing to report to the disciplinary interrogation meeting on July 18, 2011. A letter from Dolan,

7

included with the Notice, stated that the termination would be effective 14 days after receipt of the Notice and that Tooly could challenge the Notice by filing a grievance form within those 14 days. But the Notice itself and an additional accompanying letter from Schwaller stated that the termination would be effective on July 18, 2011 at the close of business.

SUNY noticed the inconsistent effective dates, and, on August 8, 2011, Proulx sent Tooly a letter withdrawing the Notice of Discipline issued on July 18, 2011. The letter also suspended Tooly without pay, effective August 8, and issued a new Notice of Discipline. The new Notice of Discipline included eight charges of misconduct, all of which concerned the same incidents as the prior Notice. The new Notice also informed Tooly that he would be fired effective 14 days after his receipt of the Notice.

Tooly asserts that he attempted to file a grievance to challenge the termination, but that he was unable to do so because he was provided with the wrong address. And, as a result, he claims, grievance procedures were never initiated. On August 21, 2011, Tooly instead submitted a complaint to the Public Integrity Bureau of the Office of the Attorney General. That complaint alleged that Tooly had reported to SUNY an instance of workplace violence committed by

8

another employee and that the disciplinary actions taken against him were in retaliation for this action. The complaint was referred to the SUNY Auditor's Office for investigation, and the Auditor's Office determined that there was no evidence to support Tooly's allegations.

Tooly asserts that he was fired in August 2011 and that he has not received any paychecks or benefits since.[2]

**B. Proceedings Below**

On December 23, 2013, Tooly filed a complaint in the United States District Court for the Northern District of New York, asserting four claims against SUNY, Dolan, and Schwaller: (1) deprivation of due process in violation of the Fourteenth Amendment; (2) violation of the Equal Protection Clause of the Fourteenth Amendment; (3) disability discrimination in violation of the New York State Human Rights Law; and (4) retaliation in violation of the New York State Human Rights Law. The defendants moved for summary judgment, which the district court granted in part and denied in part. Specifically, the district court granted

---

[2] Before the district court, Schwaller stated that Tooly is still an employee of SUNY and is currently suspended without pay pending termination, despite the fact that the August 8, 2011 Notice of Discipline stated that Tooly would be terminated 14 days after receipt of that Notice. For purposes of this appeal, however, Schwaller accepts Tooly's allegations that he was fired in August 2011.

summary judgment to SUNY and to Dolan on all claims. The district court also granted summary judgment to Schwaller on Tooly's equal protection and retaliation claims. The district court denied summary judgment and permitted Tooly to proceed, however, on his due process claim and his state law disability discrimination claim against Schwaller. At this time, Schwaller appeals only the district court's decision on the due process claim, asserting that he is entitled to qualified immunity and hence permitted to make an interlocutory appeal.

The district court based its ruling allowing Tooly's procedural due process claim to proceed against Schwaller on the ground that a reasonable jury could find that, because Schwaller had failed to comply with some requirements of the New York Civil Service Law, Tooly had not been afforded adequate process. *Tooly v. Schwaller*, No. 7:13-CV-1575, 2017 WL 6629227, at *6-*7 (N.D.N.Y. Oct. 2, 2017). In doing so, the court further found that, because a reasonable jury could find that Schwaller had violated New York state law, he was not entitled to qualified immunity. *Id.* at *8.

The New York Civil Service Law requires that, prior to ordering a medical examination, an employer must give its employee "[w]ritten notice of the facts providing the basis for the judgment . . . that the employee is not fit to perform the

10

duties of his or her position." N.Y. Civ. Serv. Law § 72(1). It also requires that, prior to taking disciplinary action, the employer must provide the employee with "written notice thereof and of the reasons therefor," as well as a "copy of the charges preferred against him," and allow the employee "at least eight days for answering the same in writing." N.Y. Civ. Serv. Law § 75(2). Because the district court found that Schwaller had not satisfied these requirements, it held that a genuine dispute of material fact existed as to whether Tooly's due process rights had been violated.

Moreover, on largely the same basis, the district court then rejected Schwaller's claim that he was entitled to qualified immunity:

> As a reasonable juror could conclude that Schwaller's failure to follow the clear requirements of New York Civil Service Law would lead to the deprivation of Tooly's procedural due process rights under the Fourteenth Amendment, such actions would violate clearly established constitutional rights and it would not be objectively reasonable to believe their acts did not violate plaintiff's rights.

*Tooly*, 2017 WL 6629227, at *8. In short, the district court concluded that, since a reasonable jury could find that Schwaller's violation of the New York Civil Service Law deprived Tooly of his due process rights, Schwaller was not entitled to qualified immunity.

11

**DISCUSSION**

The only issue before us on this interlocutory appeal is whether the district court erred in denying summary judgment to Schwaller on the basis of qualified immunity. We hold that the district court erred in relying on the violation of a state statute to defeat qualified immunity. We further hold that, because Schwaller's conduct did not violate clearly established federal law, he is entitled to qualified immunity as a matter of law.

## A. Jurisdiction

This court has jurisdiction to review an interlocutory appeal of a denial of qualified immunity "when the underlying issues raise only questions of law." *Bryant v. Egan*, 890 F.3d 382, 386 (2d Cir. 2018). If "a factual determination is a necessary predicate to the resolution of whether . . . immunity is a bar, review is postponed and we dismiss the appeal." *Id.* (internal quotation marks and citation omitted). Thus, an interlocutory appeal is only appropriate to determine whether the defendant is entitled to qualified immunity as a matter of law "on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find." *Bolmer v. Oliveira*, 594 F.3d 134, 141 (2d Cir. 2010) (internal quotation marks and citation omitted).

"[W]here the district court denied immunity on summary judgment because genuine issues of material fact remained, we have jurisdiction to determine whether the issue is *material*, but not whether it is *genuine*." *Id*. at 140-41 (emphasis in original).

Tooly argues that Schwaller's interlocutory appeal is not properly before this Court because it turns on the district court's determination of whether genuine issues of material fact exist. Schwaller agrees, however, for purposes of this appeal, to rely "only upon facts plaintiff has alleged or admitted." Appellant's Br. at 3 n.1; *see Bolmer*, 594 F.3d at 141. Therefore, this court has jurisdiction to decide whether, on the facts alleged by Tooly, Schwaller is entitled to qualified immunity as a matter of law. Our review thus cabined, we assess the district court's denial of summary judgment *de novo*. *Lauro v. Charles*, 219 F.3d 202, 206 (2d Cir. 2000).

### B. Standard for Qualified Immunity

A defendant is entitled to qualified immunity under federal law if "(1) [the defendant's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for [the defendant] to believe that his actions were lawful at

the time of the challenged act." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (internal quotation marks and citations omitted).

**C. Schwaller's Defense**

Schwaller asserts qualified immunity solely against Tooly's procedural due process claim. The Due Process Clause is violated when a claimant is deprived of a protected liberty or property interest without adequate process. *See Ciambrello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). In determining how much process is adequate, we look to "[f]ederal constitutional standards rather than state statutes [to] define the requirements of procedural due process." *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987). "[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . *does not settle what protection the federal due process clause requires*." *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) (emphasis added) (internal quotation marks and citation omitted); *see also Coles v. Erie Cty.*, 629 F. App'x 41, 42-43 (2d Cir. 2015) (summary order).

It follows, and we have repeatedly held, that a state statute does not serve as "clearly established law" for purposes of qualified immunity. Since a violation of state law does not *per se* result in a violation of the Due Process Clause, it cannot

14

*per se* defeat qualified immunity. *See Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) ("A defense of qualified immunity is not displaced by a violation of state law requirements."); *see also, e.g.*, *Robison*, 821 F.2d at 922. To determine whether a violation of state law overcomes federal qualified immunity, then, the court must determine whether the conduct that violated the state statute also violates clearly established federal law, and this is a distinct and separate inquiry. And, although there may be some overlap, the requirements of federal due process law are "not inherently coextensive" with those of the New York Civil Service Law. *See Coles*, 629 F. App'x at 43. Consequently, a defendant who violates the New York Civil Service Law has not necessarily violated clearly established federal due process law.

In this case, the district court appears initially to have recognized "that the failure to comply with all or any requirements of New York State Civil Service Law may not *per se* result in a violation of the due process clause of the Fourteenth Amendment." *Tooly*, 2017 WL 6629227, at *5. But, despite this statement, the district court based its holding almost exclusively on Schwaller's failure to comply with the New York State Civil Service Law. Significantly, the district court did not

assess whether Schwaller's conduct violated the procedural guarantees of the federal Due Process Clause, as laid out by the Supreme Court.

This was legal error. But, whether this error justifies a remand, supports a reversal, or is harmless depends on whether, accepting Tooly's version of the facts, Schwaller's actions violated clearly established federal law. It is to this that we now turn.

A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process. *See O'Connor v. Pierson*, 426 F.3d 187, 195-96 (2d Cir. 2005). Tooly claims that he was twice deprived of a protected property interest: first, when he was placed on involuntary leave in May 2011 and, second, when his employment was terminated in August 2011. The district court did not distinguish between the two deprivations—termination and involuntary leave—and simply found that Tooly had a protected property interest in his continued employment.

## D. Tooly's Involuntary Leave

Assessing separately whether, in the actual circumstances of his case, Tooly's placement on involuntary leave was a deprivation of a property interest sufficient to trigger due process requirements, we conclude that it was not.

Under this Circuit's precedents, an employee who is placed on *unpaid* leave has been deprived of a protected property interest, but "an employee who is on leave and receiving his normal salary" has not. *O'Connor*, 426 F.3d at 199. And this remains so even though the employee is required to draw upon leave accruals, such as sick leave, to maintain that salary. "As long as the employee is receiving a paycheck equivalent to his normal salary, that the employee is drawing down his sick leave is a bookkeeping entry with no pecuniary effect." *Id.* at 200. Such an employee has only been deprived of a property interest triggering due process when "he suffers a financial loss because of that leave's unavailability," *e.g.*, when the employee runs out of leave accruals while still on leave. *Id.* at 199.

On the facts before us, Schwaller did not deprive Tooly of a protected property interest when he placed Tooly on involuntary leave on May 17. Schwaller's letter to Tooly expressly stated: "While you are on this leave, you may charge any of your accruals. When these are exhausted, you will be eligible for sick

17

leave at half-pay." J.A. 55. Tooly has not argued that his accruals were insufficient to cover his full salary during his period of involuntary leave.[3] Thus, Tooly was not deprived of a protected interest. It follows that Schwaller did not violate a clearly established due process right by placing Tooly on involuntary leave, and that doing so did not deprive Schwaller of qualified immunity.

---

[3] Accordingly, we express no opinion as to whether sick leave at half pay would be a deprivation triggering due process requirements.

We also note that Tooly's Counterstatement of Material Facts contains an inconsistency regarding the date on which Tooly stopped being paid. In one place, Tooly states that he stopped being paid in April 2011 while, elsewhere, he states that he stopped being paid in August 2011. *Compare* J.A. 159, *with, e.g.*, J.A. 147. Schwaller states that the reference to April 2011 is a typographical error, as Tooly's own deposition testimony confirms that he stopped being paid after his termination in August 2011. *See* J.A. 137-38. Schwaller also argues that, in context, April 2011 would make no sense because it predates Tooly's involuntary leave, which began on May 18, 2011.

Tooly does not contest Schwaller's characterization of the April 2011 date as a typographical error. To the contrary, Tooly's brief on appeal makes no reference to *any* due process violation occurring before his May 18 placement on involuntary leave. *See, e.g.*, Appellee's Br. at 2 ("Beginning in May 2011, Tooly was subjected to a series of [c]onstitutional deprivations."). Accordingly, while we accept "the facts that plaintiff alleges are true" on interlocutory appeals from a denial of qualified immunity, *see Bolmer*, 594 F.3d at 141, we construe Tooly to be alleging that he stopped being paid in August 2011.

**E. Tooly's Termination**

### *1. The* **Loudermill** *Requirements*

The district court, however, did correctly determine that Tooly's termination was a deprivation of a protected property interest requiring due process. *See O'Connor*, 426 F.3d at 196. The remaining issue, then, is whether Schwaller provided Tooly with adequate process prior to firing him.

The Supreme Court in *Cleveland Board of Education v. Loudermill* held that pre-deprivation process requires: (1) "oral or written notice of the charges against [the employee]"; (2) "an explanation of the employer's evidence"; and (3) "an opportunity to present [the employee's] side of the story" and "to present reasons, either in person or in writing, why [the] proposed action should not be taken." 470 U.S. 532, 546 (1985). In the case before us, the question presented is whether there is clearly established federal law holding that the Due Process Clause is violated when the employer has provided the plaintiff with an opportunity to receive the process required by *Loudermill*, but the plaintiff, for possibly proper reasons, has not made use of that process by appearing or responding.

19

### 2. The Relevant Facts in Tooly's Case

When Tooly was instructed to appear for his two scheduled medical examinations, he was advised both times that "failure to attend this medical examination may subject you to disciplinary action." J.A. 55; *see also* J.A. 59. Admittedly, however, Dolan's June 30, 2011 letter, which informed Tooly about his disciplinary interrogation meeting, did not mention either of the missed medical examinations as the reason for the disciplinary hearing. The letter stated only that Tooly "may have committed acts for which formal disciplinary action may be initiated" and that the purpose of the interrogation meeting would be to question him concerning this matter. J.A. 60. The letter did clearly advise him that "failure or refusal to report as directed may, in itself, be grounds for disciplinary action." *Id.*

While Dolan's June 30, 2011 letter did not specify the charges against Tooly, his attorney, Hartt, requested that information from Dolan, and Dolan called Hartt twice in an effort to respond to his request. Dolan left messages with Hartt's office, but she never received a return call or any other communication from Hartt. J.A. 48.

Additionally, Schwaller argues that, at the proposed disciplinary meeting, Tooly would have received all of the procedural protections required by *Loudermill*. Moreover, Tooly was advised that failure to attend the meeting would "waiv[e] [his] right to provide information about potential disciplinary action that could be issued against [him]," and that "[a]ny disciplinary action taken against [him would] proceed without the interrogation." J.A. 68. As we have held, a "failure to submit to the [disciplinary] procedures precludes consideration of the fairness of those proceedings in practice." *Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988). Because Tooly never appeared for the interrogation meeting, we cannot say with certainty what would have occurred at the meeting, or whether the meeting would or would not have been fair. However, as discussed below, we do not need to decide whether the procedures afforded Tooly were constitutionally adequate because we can resolve the issue on "clearly established law" grounds. *See Cerrone*, 246 F.3d at 199.

### 3. The Lack of Clearly Established Law

For qualified immunity to apply, it is sufficient that no clearly established law has held that "an officer acting under similar circumstances" violated an employee's due process rights. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017). Clearly

21

established law should not be defined "at a high level of generality," but "must be particularized to the facts of the case." *Id.* (internal quotation marks and citations omitted); *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775-76 (2015). No case, in this Circuit or elsewhere, that has been cited to us has held that, where the defendant provides an opportunity for the plaintiff to receive due process at a meeting and the plaintiff, even for potentially valid reasons, fails to appear, the defendant must provide alternative procedures. Nor has any case established that the procedures required by *Loudermill* may not be provided at that same hearing or that they must be provided in a particular manner not satisfied here.

Accordingly, we need not decide whether, in the circumstances of this case, the notices given satisfy the requirements of due process. And we conclude that, since Schwaller has not violated Tooly's clearly established rights, he is entitled to qualified immunity.

**CONCLUSION**

For the foregoing reasons, the district court's decision is **REVERSED**, and the case is **REMANDED** with instructions to dismiss the due process claim against Schwaller.

22