*Waronker v. Hempstead Union Free School District*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of October, two thousand nineteen.

PRESENT:
> JOHN M. WALKER, JR.,
> SUSAN L. CARNEY,
> > *Circuit Judges*,
> JOHN G. KOELTL,
> > *District Judge.**

---

DR. SHIMON WARONKER,

> *Plaintiff-Appellant*,

> v.                                    No. 19-407

HEMPSTEAD UNION FREE SCHOOL DISTRICT,
BOARD OF EDUCATION OF THE HEMPSTEAD
SCHOOL DISTRICT, DAVID B. GATES, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY, RANDY
STITH, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITY, LAMONT E. JACKSON, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY,
PATRICIA WRIGHT, AS A NECESSARY PARTY

---

* Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

IN HER CAPACITY AS CLERK OF THE
HEMPSTEAD SCHOOL DISTRICT,

     *Defendants-Appellees.*

_____

FOR PLAINTIFF-APPELLANT:           FREDERICK K. BREWINGTON, Law
                                             Offices of Frederick K. Brewington,
                                           Hempstead, NY.

FOR DEFENDANTS-APPELLEES:     JONATHAN L. SCHER (Austin Graff, *on the brief*), The Scher Law Firm, LLP, Carle Place, NY.

     Appeal from a judgment of the United States District Court for the Eastern District of New York (Hurley, *J.*).

     **UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on January 18, 2019, is **AFFIRMED**.

     Shimon Waronker appeals from a judgment of the United States District Court for the Eastern District of New York (Hurley, *J.*), dismissing his claims under Federal Rule of Civil Procedure 12(b)(6) and denying him leave to amend his complaint. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

     We draw the following factual allegations from Waronker's complaint, taking them as true for the purposes of evaluating a motion to dismiss. This action stems from Waronker's work as superintendent for the Hempstead Union Free School District (the "School District"). The School District has a long history of academic problems and financial mismanagement. Waronker, however, believed that "[his] past successful transformative efforts in [other] schools . . . would enable him to do what was necessary for [the] School District." Joint App'x 3-4. Accordingly, when he was hired as the School District's superintendent in 2017, Waronker took several steps towards "reshaping the structure of administration, services[,] and education in the District." *Id.* at 17. These included hiring and

firing personnel, forming collaborations with outside educational organizations, contracting with "a Forensic Auditing Firm" to review the School District's books, and hiring "[s]pecial investigators to . . . root out the corruption and mismanagement." *Id.* at 26.

At some point, however, the Board of Education of the Hempstead School District (the "Board") started to resist Waronker's reform efforts, and in November 2017, it fired "the Special Investigators who were looking at abuse, mismanagement and possible corruption." *Id.* at 29. In response, Waronker sent an email to the Board on December 6, 2017 (the "Board Email"), advising that he had "consulted with several law enforcement agencies" about "matters [that] . . . appear to be both unlawful and unethical." *Id.* Three weeks later, the Board suspended Waronker's authority to act as superintendent. The Board's action prompted Waronker to distribute an open letter to the Hempstead community (the "Community Letter") in which he urged members to "collaborate with me to make Hempstead Schools thrive again" and warned that "[p]olitics, self-interest[], patronage, vendettas, threats, and cover-ups cannot rule the day." *Id.* at 31. Four days later, on January 9, 2018, the Board placed Waronker on paid administrative leave. It did so without prior notice to Waronker and without providing him a pre-suspension hearing.

On January 19, 2018, Waronker sued the School District, the Board, and several School District employees (collectively, "Defendants-Appellees"), alleging claims under (1) the Due Process Clause, for deprivation of both property and liberty interests; (2) the First Amendment, for unlawful retaliation; and (3) New York law, for breach of contract and retaliation. After Defendants-Appellees moved to dismiss the complaint, Waronker sought leave to amend his complaint to add allegations concerning certain "Specifications and Charges" that the School District had recently filed against Waronker in what appears to be an administrative proceeding. Less than three weeks later, in January 2019, the District Court dismissed Waronker's federal-law claims under Rule 12(b)(6). It further declined to exercise supplemental jurisdiction over his state-law claims and denied Waronker leave to amend his complaint on futility grounds.

We "review *de novo* the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting all factual allegations as true and drawing all reasonable inferences in favor

3

of the plaintiff." *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018) (citation omitted). We review "a district court's denial of leave to amend for abuse of discretion, unless the denial was based on an interpretation of law, such as futility, in which case we review the legal conclusion *de novo*." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

    1.  First Amendment Retaliation

Waronker asserts that Defendants-Appellees violated his First Amendment right to free speech when they retaliated against him for speaking out about corruption and academic mismanagement occurring in the School District. His claim is based on three communications: (1) the Board Email, (2) the Community Letter, and (3) the set of communications between Waronker and several law enforcement agencies that was referenced in the Board Email.

To state a retaliation claim under the First Amendment, a public employee must plausibly allege that "[he] spoke as a citizen on a matter of public concern." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (citation omitted). A plaintiff speaks as a government employee, rather than as a citizen, when "[his] remarks were made pursuant to his official employment responsibilities." *Montero*, 890 F.3d at 398. Whether a plaintiff spoke as a citizen is a question of law for the court to decide. *See Singer v. Ferro*, 711 F.3d 334, 339 (2d Cir. 2013). We have cautioned, however, that "[this] inquiry . . . is not susceptible to a brightline rule," *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012), because "speech can be pursuant to a public employee's official job duties even though it is not required by, or included in, the employee's job description," *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 593 F.3d 196, 203 (2d Cir. 2010) (internal quotation marks omitted). We have therefore adopted "a functional approach toward evaluating an employee's duties," *Matthews*, 779 F.3d at 173, framing the "[u]ltimate . . . question . . . [as] whether the employee's speech was part-and-parcel of that person's concerns about his ability to properly execute his duties," *Montero*, 890 F.3d at 398 (internal quotation marks and alterations omitted).

4

In this case, Defendants-Appellees do not dispute that Waronker's statements concerned matters of public concern, but they contend that Waronker's statements were made pursuant to his official duties as superintendent. However, Waronker does not plausibly allege that he was speaking as a citizen when he publicly accused the School District of corruption. The complaint makes clear that "root[ing] out [] corruption and mismanagement" was "part-and-parcel" (in the *Montero* formulation) of Waronker's daily responsibilities as superintendent, even if, as Waronker claims on appeal, it was not part of his formal job description. Joint App'x 26. Waronker's factual allegations further make evident that he sent the Board Email and Community Letter pursuant to his official employment responsibilities. Not only do both of these communications focus on Waronker's efforts as superintendent to reform the School District, but Waronker signed the Board Email using his official job title, "Superintendent of Schools," and he posted the Community Letter on the School District's website.

As for the communications between Waronker and law enforcement agencies that he referenced in the Board Email, nothing in the complaint suggests that he consulted with these agencies as a private citizen. Instead, as he explains in the Board Email, Waronker felt "compelled" to contact law enforcement because (1) the Board failed to take "corrective action" after Waronker "rais[ed] questions about suspected illegal financial activity," and (2) Waronker had "[a] professional, moral and legal obligation to serve the District." Joint App'x 29. Waronker therefore framed his consultations with law enforcement as "a means to fulfill, and undertaken in the course of performing, his primary employment responsibilit[ies]." *Weintraub*, 593 F.3d at 203 (internal citations and quotation marks omitted). Indeed, Waronker all but concedes this point when he notes that he consulted law enforcement "[a]s a fiduciary and as a guardian of the public trust." Joint App'x 29.

Nor is Waronker's reliance on *Lane v. Franks*, 573 U.S. 228 (2014), persuasive. In that case, the Supreme Court held that a state employee spoke as a citizen when he gave sworn testimony in a judicial proceeding, even though his testimony concerned certain corrupt activities that he uncovered while acting pursuant to his official duties. The Court explained that "[s]worn testimony in judicial proceedings is a quintessential example of speech as a

5

citizen for a simple reason: Anyone who testifies in court bears an obligation, to the court and society at large, to tell the truth." *Id.* at 238. Thus, the Court emphasized, it is this obligation to tell the truth—an obligation that stands "distinct and independent" from any obligation that a public employee might owe to his employer—that "renders sworn testimony speech as a citizen and sets it apart from speech made purely in the capacity of an employee." *Id.* at 239. Here, by contrast, Waronker did not bear an obligation as a private citizen to communicate with law enforcement about the School District's corruption and mismanagement. Instead, as expressed in the complaint, Waronker felt "compelled" to contact law enforcement by "[his] professional, moral and legal obligation to serve the District." Joint App'x 29.

Accordingly, we affirm the District Court's dismissal of Waronker's First Amendment claim on the grounds that he failed to plausibly allege that he spoke as a private citizen on a matter of public concern.

2. Procedural Due Process Claims

Waronker asserts two procedural due process claims, one alleging deprivation of a protected property interest, the other alleging deprivation of a protected liberty interest. Neither survives review.

a. *Property-Interest Claim*

To establish a property-based procedural due process claim, "[a] plaintiff must show that state action deprived her of a property interest protected by the Fourteenth Amendment." *Velez v. Levy*, 401 F.3d 75, 85 (2d Cir. 2005). We engage in "a two-step process" to determine whether a property interest is constitutionally protected. *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005). First, we determine "whether some source of law other than the Constitution, such as a state or federal statute, confers a property right on the plaintiff." *Id.* Then, "[o]nce such a property right is found, we determine whether that property right constitutes a property interest for purposes of the Fourteenth Amendment." *Id.* (internal quotation marks omitted).

6

In this case, Waronker's property-based procedural due process claim rests on the Board's decision to place him on a paid administrative leave of absence. Under this Circuit's precedents, however, an employee who is suspended is not deprived of a protected property interest "[so] long as the employee is receiving a paycheck equivalent to his normal salary." *Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019) (internal quotation marks omitted). Thus, while "an employee who is placed on unpaid leave has been deprived of a protected property interest," an employee who is placed on paid leave "has only been deprived of a property interest triggering due process when he suffers a financial loss." *Id.* (emphasis omitted) (internal quotation marks omitted). Waronker does not assert, either in his complaint or on appeal, that he was paid less than his full salary while on administrative leave. His suspension therefore does not provide an adequate basis for his procedural due process claim.

Nor can this claim rest on the allegations that Waronker was suspended without "a prompt and meaningful pre-suspension hearing." Waronker's Br. 47. Although Waronker was entitled to such process under his employment contract, a pre-suspension hearing is "not an end in itself," but instead "has value only because it may lead to something valuable," namely, avoiding suspension. *McMenemy v. City of Rochester*, 241 F.3d 279, 287 (2d Cir. 2001); *see also Martz v. Incorporated Village of Valley Stream*, 22 F.3d 26, 31 (2d Cir. 1994) ("Thus, where a breach of contract does not give rise to a deprivation of a protectible property interest, plaintiff's exclusive remedy lies in state court for breach of contract." (internal quotation marks omitted)). Procedural due process, however, "protects only important and substantial expectations in life, liberty, and property"; it "does not protect "trivial and insubstantial interests." *N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 164 (2d Cir. 2001) (internal quotation marks and alterations omitted). Thus, because a pre-suspension hearing does not constitute an independent substantive right, much less one that implicates "important and substantial" property interests, Defendants-Appellees did not deprive Waronker of a constitutionally protected interest when they suspended him without a hearing. *Id.*

Accordingly, we affirm the District Court's dismissal of Waronker's property-based procedural due process claim.

b. *Liberty-Interest Claim*

Waronker also brings a "stigma-plus" claim, which we have described as "a species within the phylum of [liberty-based] procedural due process claims." *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006). To prevail on such a claim, a plaintiff must plausibly allege "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (internal quotation marks omitted).

The District Court dismissed Waronker's claim on the first prong of the stigma-plus test, correctly concluding that the complaint failed to identify any "false, stigmatizing statements" that Defendants-Appellees made about Waronker. *Waronker v. Hempstead Union Free Sch. Dist.*, No. 2:18-cv-393(DRH)(SIL), 2019 WL 235646, at *5 (E.D.N.Y. Jan. 16, 2019). On appeal, Waronker does not seriously contest this conclusion, nor can he: beyond conclusory assertions that Defendants-Appellees "subjected [Waronker] to scandalous claims and investigations," Joint App'x 34, the complaint is devoid of any specific statements made about him, much less ones capable of supporting a stigma-plus claim. Instead, Waronker argues that, if the District Court had permitted him leave to amend his complaint, he would have alleged statements that were sufficiently stigmatizing.

We need not resolve, however, whether Waronker's proposed amendments to the complaint would satisfy the "stigma" requirement of a stigma-plus claim, because even assuming they would, the complaint still fails to satisfy the "plus" requirement. To plead an adequate "plus" factor, a plaintiff must identify "some tangible and material state-imposed burden" that is separate from the deleterious effects flowing directly from the stigmatizing statement. *Velez*, 401 F.3d at 87 (internal citation omitted); *see also Sadallah*, 383 F.3d at 38 ("[The] deleterious effects flowing directly from a sullied reputation, standing alone, do not constitute a plus under the stigma plus doctrine." (internal quotation marks and alterations omitted)). Burdens that satisfy the "plus" prong include "the deprivation of a plaintiff's property and the termination of a plaintiff's government employment." *Sadallah*, 383 F.3d at 38 (internal citations omitted). By contrast, our precedent instructs that a plaintiff's

8

temporary suspension from work does not constitute an adequate "plus" factor if the plaintiff suffers no financial loss. *See Patterson v. City of Utica*, 370 F.3d 322, 332 (2d Cir. 2004) ("It cannot, as a matter of law, be viewed as a significant alteration of plaintiff's employment status when, in fact, he was quickly hired back in the same position from which he was supposedly fired."); *Dobosz v. Walsh*, 892 F.2d 1135, 1137-38, 1140 (2d Cir. 1989) (holding that plaintiff's five-month suspension did not constitute a sufficient plus factor because plaintiff was later reinstated with back pay and seniority credit).

Waronker's placement on administrative leave does not satisfy the "plus" requirement because, as noted above, nothing in the complaint suggests that he suffered a financial loss as a result of his suspensions. Nor can Waronker avoid dismissal of his stigma-plus claim by simply alleging that he suffered "public abuse and humiliation" at the hands of Defendants-Appellees. Waronker's Br. 41. Instead, Waronker must identify "a state-imposed burden or alteration of status . . . [that is] *in addition* to the stigmatizing statement." *Sadallah*, 383 F.3d at 38 (internal quotation marks omitted). Because the complaint fails to do so, Waronker's stigma-plus claim does not survive. Thus, even assuming *arguendo* that Waronker plausibly alleged a stigmatizing statement, we would nevertheless affirm the District Court's dismissal of his liberty-based procedural due process claim for failure to plead an adequate "plus" factor.

3. State-Law Claims

The District Court dismissed Waronker's state-law claims for retaliation and breach of contract on two grounds. First, it held that the claims were barred by section 3813(1) of the New York Education Law, which provides, in essence, that a plaintiff may not maintain an action against a school district unless the plaintiff has previously filed a "written verified claim" with the school district within three months after the accrual of the action. N.Y. Educ. Law § 3813(1). The District Court then proceeded to conclude that, even if section 3813(1) did not bar Waronker's state-law claims, dismissal was warranted because the Court had decided not to exercise supplemental jurisdiction over Waronker's remaining state-law claims.

9

It is preferable for the court to address the matter of its own jurisdiction before considering the substance of a claim. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit . . . ."). Indeed, because the District Court declined to exercise supplemental jurisdiction over Waronker's state-law claims, it had no jurisdiction to decide the state law question of whether section 3813(1) precluded Waronker from bringing these claims against Defendants-Appellants.

In the past, we have vacated and remanded where (1) "it [was] unclear whether the dismissal of . . . [a state-law claim] was on the merits or based on a decision not to exercise supplemental jurisdiction," and (2) the district court's judgment did not specify whether the state-law claim was "dismissed with or without prejudice." *Wegner v. Upstate Farms Coop., Inc.*, 560 F. App'x 22, 27 (2d Cir. 2014). Here, however, the District Court explicitly declined to exercise its supplemental jurisdiction; its remarks leave no doubt that it intended to dismiss Waronker's state-law claims without prejudice so that they could "be re-filed in state court where the Parties will be afforded a surer-footed reading of applicable law." *Waronker*, 2019 WL 235646, at *8 (internal quotation marks and alterations omitted). Moreover, we find no abuse of discretion in the District Court's decision not to exercise supplemental jurisdiction. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ("A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage."). Accordingly, we affirm the District Court's dismissal of Waronker's state-law claims, emphasizing that this dismissal is without prejudice. We do not express any view on the application of section 3813 of the New York Education Law to the facts at hand.

4. <u>Leave to Amend the Complaint</u>

Finally, Waronker asserts that the District Court erred by denying him leave to amend his complaint so as to add allegations concerning certain "Specifications and Charges" filed against him by the School District. These Specifications and Charges are relevant, Waronker contends on appeal, to his allegations that Defendants-Appellees made stigmatizing

statements about him. As we explained above, however, even if the complaint alleged a sufficiently stigmatizing statement, Waronker's stigma-plus claim would still fail as a matter of law because he did not allege facts satisfying the "plus" (burden) requirement under this doctrine. Nothing else in Waronker's motion to the District Court, or in his briefs on appeal, suggests that the Specifications and Charges contain facts that would save his complaint from dismissal on that ground. Where, as here, "the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). We therefore conclude that the District Court did not err by denying Waronker's motion to amend his complaint.

* * *

We have considered Waronker's remaining arguments and conclude that they are without merit. For the foregoing reasons, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11